## CASSANDRA WARREN v. S. P. WILLSON, CHIEF JUSTICE; ET AL.

### No. 2487.    Decided February 28, 1917.

**1.—Certified Question—Conflict in Rulings—Mandamus.**

Mandamus can be granted by the Supreme Court to require a Court of Civil Appeals to certify to it for decision, on the ground of conflict in rulings, a question determined in a case in which the jurisdiction of the latter court is final, only where such ruling is in conflict with that of another Court of Civil Appeals. Where it is not so, but the conflict is with a ruling by the Supreme Court, the propriety of certifying the question is left to the appellate court. (P. 263.)

**2.—Same—Husband and Wife—Bank—Deposit.**

It was ruled in this case by the Court of Civil Appeals (152 S. W., 691) that where the husband and wife had deposited her separate means to her individual credit in the savings department of a bank to be paid out only on draft by the depositor and production of the pass book then delivered to her, the control over his wife's separate estate given the husband by statute protected the bank in making payment of such deposit to another on the husband's check and without production of the pass book, as against the claim of the wife who retained the pass book and signed no check. Held that this ruling was in conflict with that of the Court of Civil Appeals for the Fourth District in O'Connell v. Storey, 105 S. W., 1174, and the Court of Civil Appeals is required by mandamus to certify the question. (Pp. 263, 264.)

Application to the Supreme Court by Cassandra Warren for mandamus to the justices of the Court of Civil Appeals, Sixth District, to require them to certify a question.

*Hunter & Hunter,* for petitioner.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

This is a mandamus proceeding to require the honorable Court of Civil Appeals for the Sixth District to certify to this court for determination certain legal questions involved in the case of Waggoner Bank & Trust Company, Appellant, v. Mrs. Cassandra Warren, Appellee, upon the ground that the court's ruling is in conflict with decisions of this court, decisions of its own, and those of other Courts of Civil Appeals.

The case is one of which the jurisdiction of the Court of Civil Appeals is final. This being true, and the motion to certify having been duly made, it became the duty of the court, under article 1623, to certify the questions if its ruling thereon was in conflict with a decision of another Court of Civil Appeals. In such a case we may require the certification by mandamus. McCurdy v. Conner, 95 Texas, 251. We have no authority, however, to compel a Court of Civil Appeals to certify a question upon the ground that its ruling is in conflict with a decision of the Supreme Court. The propriety of certifying such a conflict is left to the determination of that court. Article 1623 (the Act of 1899) is the only statute we have making it the duty of the Courts of Civil Appeals to certify questions to the Supreme Court in case of conflict, and it confines the duty to only those rulings which are in conflict with a decision of "some other Court of Civil Appeals." Smith v. Conner, 98 Texas, 434; Texas & P. Ry. Co. v. Willson, 101 Texas, 269; Newnom v. Neill, 101 Texas, 42; McKay v. Conner, 101 Texas, 313.

We shall, accordingly, only consider whether the ruling complained of conflicts with cited decisions of other Courts of Civil Appeals.

This is the case: Mrs. Warren, a married woman, but who separated from her husband on the next day, called at the appellant bank, on November 17, 1910, accompanied by her husband, and presented to its cashier a draft upon a New York bank for $1500, her separate property, and so known to be by the cashier at the time, having the cashier pay her thereon $200 in money, place $600 to her husband's credit in the bank's commercial department, and credit the remainder, $700, to an account in her individual name in its savings department. The cashier gave her a pass-book, in which her deposit was noted, and advised her that the money could not be withdrawn from the bank without the pass-book being brought or sent to the bank. On the outside cover of the pass-book this was printed:

"Take care of this book. It must be presented when money is deposited or withdrawn. Be sure that no unauthorized person secures possession of it. If lost or stolen, notify the bank at once."

In the book were printed rules governing deposits and payments in the bank's savings department, declaring the pass-book to be the voucher of the depositor, and that all payments made to persons producing it should be valid payments; and, further, that all drafts drawn upon the account must be made by the depositor, or by his or her order in writing, and upon production of the pass-book, but that all payments made to

the person producing the pass-book should be good and valid. Mrs. Warren relied upon the statement made to her by the cashier that no part of the amount placed to her credit in the savings department could be withdrawn save upon production of her pass-book, and would not have made the deposit had she known that the bank would permit her husband to withdraw the money without producing it. She re-tained the pass-book in her possession until March 20, 1911, when she sent it by mail to the bank with the request that it forward her a draft for the amount of the deposit. She was advised by the bank that in December the entire amount had been paid to her husband upon two separate checks drawn by him in her name.

In the trial court, Mrs. Warren recovered judgment, on the ground that the bank's payment of the money under the conditions stated was not binding upon her.

In reversing this judgment and rendering judgment in the bank's favor, the ruling of the Court of Civil Appeals was, that although the deposit was made by Mrs. Warren on the faith of the bank's contract that the money could not be withdrawn except upon the production of her pass-book, in making the contract Mrs. Warren should be held to have acted as the agent of her husband, and the contract was of no force as against his right to resume the control of the money. The effect of the ruling is, that, although the contract was made by the wife with, evidently, the husband's full concurrence, it was not a valid contract, because of his power to control the wife's separate property, and the bank was therefore not liable for its violation.

It is asserted that the ruling is in conflict with the decision of the Court of Civil Appeals for the Fourth District in O'Connell v. Storey, 105 S. W., 1174. There, a married woman had negotiated a contract with another by which she was to render certain personal services. She rendered the services with the acquiescence of her husband. In the suit to recover their value according to the agreement, it was held that the defendant would not be heard to question the validity of the wife's contract; that in such a case the law would impute the hus-band's authorization of the contract, and, when fulfilled by her, hold the other party to the performance of his part of it.

If the contract of a married woman with reference to her personal earnings, which, by the law in force at the time, were under the hus-band's control, is enforcible in her interest when performed by her, because of the husband's imputed authorization of the contract, it is evident that her contract, made with the husband's concurrence and implied authorization, in relation to a personal bank deposit, alike subject, under the existing law, to the husband's management, is, when performed by her, equally valid against the other party availing him-self of its benefits.

The conflict between the two decisions is apparent. The mandamus will, therefore, be allowed for the certification of the ruling in question.

*Mandamus awarded.*