## MISSOURI, K. & T. R. CO. OF TEXAS v. CITY OF WHITESBORO. (No. 865–4526.)

(Commission of Appeals of Texas. Section A. Nov. 17, 1926.)

I. Schools and school districts ⊙⇒101—Incorporated cities and towns exempt from limitation on taxing powers means cities and towns incorporated for municipal purposes (Const. art. 7, § 3, article 11, §§ 4, 5).

Incorporated cities and towns as used in Const. art. 7, § 3, exempting them from limitation on taxing power, means cities and towns incorporated for municipal purposes under article 11, §§ 4 and 5.

---

**2. Schools and school districts ⊚⟲101—City constituting separate school district, being both municipal corporation and independent school district, is exempt from tax limitations of other school districts (Rev. St. 1925, art. 2768; Rev. St. 1911, art. 2871; Const. art. 11, § 10, article 7, § 3).**

City assuming exclusive control of public free schools within its limits under Rev. St. 1925, art. 2768, and becoming a separate school district under Rev. St. 1911, art. 2871 (Acts 1905, p. 302, § 144), acquires a dual character as city organized for municipal purposes and under Const. art. 11, § 10, as a separate independent school district having territory identical with municipal corporation, though under control of same officers, and is within article 7, § 3, exempting such cities from limitation on tax powers.

**3. Schools and school districts ⊚⟲22—Only territory included within incorporated city or town may be constituted separate school district (Const. art. 11, § 10).**

Const. art. 11, § 10, authorizes creation of separate and independent school district of territory included within boundaries of city or town incorporated for municipal purposes, and not larger territory which may include boundaries of unincorporated city or town.

**4. Schools and school districts ⊚⟲101—City organized as independent school district by extending limits for school purposes only created school district not exempt from tax limitations (Rev. St. 1911, art. 2883; Const. art. 7, § 3, article 11, § 10).**

City organized for both municipal purposes and as independent school district under Const. art. 11, § 10, extending corporate limits for school purposes only under Rev. St. 1911, art. 2883 (Acts 1905, p. 302, § 148), exercised powers as school district, and thus created school district not within Const. art. 7, § 3, exempting incorporated cities constituting separate school districts from limitation on taxing power.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by the City of Whitesboro against the Missouri, Kansas & Texas Railroad Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals (275 S. W. 729), and defendant brings error. Judgment of both courts reversed, and judgment rendered for defendant.

Chas. C. Huff and A. H. McKnight, both of Dallas, and Head, Dillard, Smith, Maxey & Head and Jesse F. Holt, all of Sherman, for plaintiff in error.

Webb & Webb, of Sherman, for defendant in error.

BISHOP, J. Defendant in error, the city of Whitesboro, is a municipal corporation organized under the general laws of the state of Texas. In 1887 it acquired exclusive control of the public free schools within its limits. On August 9, 1909, by ordinance duly adopted, it extended its corporate limits for school purposes only under the provisions of article 2883, R. S. 1911 (Acts 1905, p. 263, § 148).

During the years 1918, 1919, and 1920, plaintiff in error owned 1.27 miles of railway within the city as originally incorporated, and 3.56 miles within the limits as extended for school purposes only. For these years the city undertook to levy ad valorem taxes for school district purposes as follows: 75 cents on the $100 valuation of property for the year 1918, 99½ cents on the $100 valuation of property for the year 1919, and 85 cents on the $100 valuation of property for the year 1920.

The plaintiff in error having failed to pay all the taxes on its property under such attempted levy for these years, the defendant in error filed suit against it in the district court of Grayson county, and recovered judgment for such taxes, interest, and penalties. The judgment was by the Court of Civil Appeals affirmed. 275 S. W. 729.

Defendant in error is by this suit seeking to recover judgment for ad valorem taxes for school purposes accruing while article 7, § 3, of our state Constitution, as amended in 1909 and 1918, was in force and controlling as to the rate of taxation which could be levied and collected for such purposes. This section authorized the levy and collection of an annual ad valorem state tax, and contained the following provisions, to wit:

"And the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts, heretofore formed or hereafter formed, for the further maintenance of public free schools, and the erection and equipment of school buildings therein; provided, that a majority of the qualified property taxpaying voters of the district, voting at an election to be held for that purpose, shall vote such tax, not to exceed in any one year fifty cents on the one hundred dollar valuation of the property subject to taxation in such district, but the limitation upon the amount of school district tax herein authorized shall not apply to incorporated cities or towns, constituting separate and independent school districts."

The city by its suit is seeking to recover on a rate of taxation in excess of 50 cents on the $100 valuation of property, and is not by this provision authorized to do so, if this limitation applies to it. The limitation does not "apply to incorporated cities or towns, constituting separate and independent school districts."

[1-3] "Incorporated cities or towns," as used in this provision, has been declared to mean cities or towns incorporated for municipal purposes under sections 4 and 5, article 11, of our Constitution. Snyder v. Baird Independent School District, 102 Tex. 4, 111 S. W. 723, 113 S. W. 521. Section 10, art. 11, of our Constitution provides that "the Legis-

lature may constitute any city or town a separate and independent school district," and the Legislature by article 3781, R. S. of 1879 (article 2868, R. S. 1911, article 2768, R. C. S. 1925), provided that cities and towns might assume exclusive control of the public free schools within their limits by a majority vote of the property taxpayers of such city or town at an election held for that purpose, and by Acts 1905, p. 263, § 144 (article 2871, R. S. 1911), provided that "each city or town having control of schools within its limits shall constitute a separate school district." The city of Whitesboro, prior to August 9, 1909, when it extended its limits for school purposes only to include territory not embraced within its municipal corporate limits, under the provisions of article 2883, R. S. 1911 (Acts 1905, § 148), was not only a city incorporated for strictly municipal purposes, but it was also by legislative enactment, under section 10, art. 11, of the Constitution, a separate and independent school district. It was a separate district because its territory was identical with that of the municipal corporation, and separate from all other territory for public school purposes. It is the territory included within the boundaries of a city or town incorporated for municipal purposes which the Constitution authorizes the Legislature to constitute a separate and independent school district, and not a larger territory which may also include within its boundaries that of an incorporated city or town. The municipal corporation and the independent school district are distinct, though they are both under the control of the same officers. In the case of City of Rockdale v. Cureton, 111 Tex. 136, 229 S. W. 852, the court says:

"The Constitution (section 10 of article 11) has empowered the Legislature to constitute any town or city an independent school district. The Legislature, therefore, had the power to say, as it has done in article 2871, that a city or town taking over the control of its public schools shall constitute such a district. There may thus be conferred upon a city a dual character, and with such character, dual powers. There could have been no purpose in authorizing the creation of towns and cities as independent school districts—a recognized separate class of municipal corporations with individual powers, unless in that capacity they were to have the powers of such districts."

The city of Whitesboro, prior to the time it extended its boundaries for school purposes only, "had lawfully acquired this dual character. It had its powers as strictly a municipality, to be exercised for strictly municipal purposes; and it had its powers as a duly constituted independent school district." The territory embraced within each was identical, and the property subject to taxation for the maintenance of each was the same. It was by reason of this identity of territory and property therein situated that the Legislature was authorized by section 10, art. 11, of the Constitution to constitute the city an independent school district separate from other territory, and it was by reason of this identity of territory and property that article 7, § 3, of the Constitution, provided that the limitation of the tax therein authorized of 50 cents on the $100 valuation of property should not apply.

[4] When the city of Whitesboro in 1909 extended its corporate limits for school purposes only, including within its corporate limits territory not embraced within the corporate limits of the municipality, it was exercising its powers as a duly constituted independent school district, and not the powers conferred upon it as strictly a municipality, exercised for strictly municipal purposes, and in doing so it organized and created a school district not within the contemplation of article 7, § 3, of the Constitution, in providing that the school district tax of 50 cents on the $100 valuation of property should "not apply to incorporated cities or towns constituting separate and independent school districts."

The city is seeking to recover taxes which it had no authority to levy, and we recommend that the judgments of both courts be reversed, and judgment here rendered for plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.