

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

*modified 0-7060 in part*

September 22, 1948

Hon. L. A. Woods
State Superintendent
Department of Education
Austin, Texas

Attn.:  Hon. T. M. Trimble
First Assistant

Opinion No. V-690

Re: Proper authority to
call an election for
uniform tax throughout
Rockdale School Dis-
trict, composed of
City of Rockdale and
other areas taken in
by city for school
purposes only.

Dear Sir:

We refer to your letter to which was attached
a letter from the Mayor of the City of Rockdale, from
which we quote, in part:

"The City of Rockdale was incorporated for
municipal purposes about 1872, and soon af-
ter such incorporation, assumed control of
its public schools, within the city.  At
that time the schools were managed by a
board of five trustees, who were elected
biannually by the City Council.  This me-
thod of electing trustees for the school
district within the city, was continued un-
til about 1898, when the City Council, by
ordinance, provided for a board of seven
trustees, to be elected by the qualified
voters of the City of Rockdale.  This last
mentioned method of choosing trustees has
been continued, and the Rockdale Public
Schools are now being managed and control-
led by a board of seven trustees, elected
by the qualified voters of the City of
Rockdale.

"Within the last three years, the City Coun-
cil of the City of Rockdale, acting under
the provisions of Article 2803, Revised Stat-
utes of 1925, has, by ordinances, included
three or four rural districts, in the Rock-
dale School District, for school purposes
only, and the children within the scholas-
tic age in these rural districts are now

attending the Rockdale Schools

"The City of Rockdale levies and collects
an annual maintenance tax of 50 cents on
the $100.00 valuation of all property in
the city for the support and maintenance
of the schools, and the rural districts
which have been included in the Rockdale
School District, for school purposes only,
levy a maintenance tax, but this tax is
not uniform in all of these districts.

"The City Council of the City of Rockdale
is being asked by petition, to order an
election in the City of Rockdale, and in
the districts so added for school purposes
only, to determine whether or not a main-
tenance tax of, not exceeding $1.00 on the
$100.00 valuation of all property in these
districts shall be levied as a maintenance
fund for the benefit of the Rockdale Schools.

"The City Council of the City of Rockdale
does not know whether the power to order
this election is vested in the City Coun-
cil, or in the Board of Trustees of the
Rockdale School District, and I am there-
fore submitting the matter to you, with
request that you answer the following ques-
tions:

"(a) Did the extension of the city's
boundaries to include territory not within
the city limits of the City of Rockdale,
for school purposes only, change the char-
acter or status of the existing municipal,
or city school district?

"(b) Has the City Council of the City
of Rockdale authority to order such elec-
tion, to determine whether a maintenance
tax be levied upon property in the entire
district, including that attached for school
purposes only?

"(c) Is the power to order this elec-
tion for a maintenance tax on property in
the entire district vested in the City Coun-
cil of the City of Rockdale, or is it vest-

ed in the Board of seven trustees of the
Rockdale School District?

"(d) Has the Board of Trustees of the
Rockdale School District the power to order
the election to determine whether such main-
tenance tax be levied upon the property of
the entire district?"

In the light of the above submitted facts, we
understand that prior to the last three years the Rock-
dale Independent School District was a municipally con-
trolled school district whose boundaries were coterminus
with those of the City of Rockdale, and that within the
last three years, three or four contiguous school dis-
tricts were taken into the city, by extension of the
corporation lines of the city, for school purposes only,
under and in accordance with the procedure of Article
2803, V. C. S.

In the case of Kuhn v. City of Yoakum, 257 S.W.
337, cited with approval in Hayes v. City of Beaumont,
190 S.W.(2d) 835, the contention was made that if terri-
tory of a common school district was validly annexed to
the City of Yoakum for school purposes only, then the
Yoakum school district lost the character of a school
district provided by the Constitution, Article VII, Sec-
tion 3, towit, a city having control of the schools with-
in its limits, and became another character of district,
the control and management of which are committed to the
board of trustees, and the City of Yoakum had no auth-
ority to order any election for school taxes. The court's
answer to such contention, at page 339, is as follows:

"Just how the valid annexation of the
new territory to the city for school pur-
poses only could metamorphose the district
so merely enlarged into one of another char-
acter, subject to a different system of gov-
ernment, does not readily occur. If the
situation before was that of a city or
town having control of the schools with-
in its limits as then existing, and those
limits were lawfully extended, it would
be none the less so afterwards. In a
school district of that sort, R. S. Art.
2875, makes it the duty of the city coun-
cil to submit the question of a tax to
a vote of the property tax payers, and

no other body is authorized to do so."

See also City of Houston v. Little, 244 S.W. 247, to the same effect; Attorney General's Opinions Nos. 0-6059, 0-7060. The general statement made in the first paragraph on page 7 of Opinion No. 0-7060 is in error and should be disregarded.

In Hayes v. City of Beaumont, supra, the court went further to hold that once a school district's character or status has been established as a municipal school district, then an extension of the city's boundaries for municipal purposes only (See Article 2804, third paragraph) could likewise not have the effect of changing that character or status.

Whether or not the holding of the Commission of Appeals in M.K. & T. Railway Co. v. Whitesboro, 287 S.W. 904, is in conflict with the above cited cases need not be considered here, for the reason that same is not now applicable to municipally controlled school districts, the 50¢ tax limitation provision of Section 3 of Article VII, Constitution, therein considered not now being in our Constitution. Article VII, Section 3, was amended in 1926, and as amended the Legislature is left free to fix such a tax limit as it deems advisable. Opinion No. 0-7060.

Coming now to your questions (b), (c) and (d), they are inter-related, and may be considered together.

The statute cited as Article 2875 in the above quotation from the City of Yoakum case is now codified in Vernon's Civil Statutes as Article 2798. It provides, in part:

"After a city or town has assumed control of the public free schools within its limits, the governing body shall also submit the question to the property tax payers as to whether or not the additional amount as provided for hereinafter shall be raised by taxation . . ."

Article 2799, V. C. S. reads:

"The governing body of any city or town which is a separate and independent school district, whether incorporated un-

der any act of the Congress of the Repub-
lic or the Legislature of Texas, or under
any act or incorporation whatever, shall
have power by ordinance to annually levy
and collect ad valorem taxes for the sup-
port and maintenance of public free schools
and for the erection and equipment of public
free school buildings in the city or town.
The proposition submitted may be for such a
rate of ad valorem tax not exceeding such
per cent. as may be voted by a majority
vote of all votes cast at any such elec-
tion. If the proposition is carried, the
school tax shall be continued to be annual-
ly levied and collected for at least two
years, and thereafter, unless it be dis-
continued at an election held to determine
whether the tax shall be continued or dis-
continued at the request of fifty property
taxpayers of such independent district.
When the tax is continued no election to
discontinue it shall be held for two years;
when the tax is discontinued no election to
levy a tax shall be held during the same
year."

Article 2800, V. C. S., provides:

"If the vote of the taxpayers is in
favor of said tax, then the governing body
of a city or town which has assumed exclu-
sive control of the public free schools in
its limits shall annually thereafter levy
and assess upon the taxable property in
the limits of such district, by ordinance
duly passed and approved, in accordance
with the usual assessment of taxes for
municipal purposes, such additional tax,
not to exceed the rate voted, as may be
necessary for the support and maintenance
of the public schools and for the erection
and equipment of public school buildings
for nine months in the year. If a specific
rate of tax has been voted, the governing
body shall have no discretion in determin-
ing the rate to be levied, but shall levy
and assess the same at the rate voted."
(Emphasis in above statutes added).

Article 2801, V. C. S., provides:

"In a city or town constituting an independent school district, and where a special tax for school purposes has been voted by the people or provided by special charter, the board of trustees shall determine what amount of said tax, within the limit voted by the people or fixed by special charter, will be necessary for the maintenance and support of the school and for the erection and equipment of public school buildings for each current year; and the governing body of such city or town, upon the requisition of the said board of trustees, shall annually levy and collect said tax, as other taxes are levied and collected; and said tax, when collected, shall be placed at the disposal of the said school board, by paying over monthly to the treasurer of said board the amount so collected, to be used for the maintenance and support of the public free schools and for the erection and equipment of public school buildings in such district."

Taxation for the management and control of the public schools of school districts is governed by Section 3, of Article VII of the Constitution. Opinion No. O-6059 and cases therein cited. The section provides for legislative authorization of additional taxation by popular vote for maintenance and for the erection of school buildings.

The Legislature in H. B. 46, 35th Legislature, 3rd C.S., Acts 1917, amended what was there Article 925, R.S. 1911, (now Article 823, V.C.S.) so as to provide that cities and towns constituting separate and independent school districts may levy and collect such ad valorem tax for the support and maintenance of their public free schools and for the erection and equipment of school buildings therefor as under S. B. 470, 35th Legislature, Acts 1917, (now Articles 2799 and 2800, V.C.S.) their electors may determine. As pointed out by the Supreme Court in City of Rockdale v. Cureton, 111 Tex. 136, 229 S.W. 852, this amendment by its terms applies both to cities and towns which have extended their limits for school purposes and those which have not so extended their limits, classifying them separately.

Article 2803, under which we are advised the

City of Rockdale has taken in other contiguous school districts or areas for school purposes only, authorizes a city to "extend its corporation lines" for school purposes only. It has been held that when the lines of a city are extended in the manner provided by law, the territory included in such extension for the purpose for which such extension was made, is thereby included within such corporate limits, and for such purpose becomes a part thereof. Such town or city still remains in control of its public schools "within its limits" and such added territory is, for school purposes, within its limits. Poteet v. Bridges, 248 S.W. 415.

The title to school property of a municipally controlled school district is vested in the board of school trustees as is also the use and control of school buildings after they are erected. Article 2772, V. C. S. But the boards of trustees have no authority to raise for such purposes money by taxation. Articles 2798, 2799, 2800, 2801, V. C. S. In short, the city provides the school houses and the moneys necessary to operate same, in addition to those provided by the state, and the board of school trustees manages and controls the schools. Poteet v. Bridges, supra.

Accordingly, the City Council alone, that is, the governing body, of the City of Rockdale has the authority to order an election to determine whether a maintenance tax be levied upon property in the entire district, including that attached under Article 2803 for school purposes only.

### SUMMARY

The extension of boundaries of the City of Rockdale for school purposes only, under Article 2803, V. C. S., does not change the character or status of the existing municipally controlled school district. Kuhn v. City of Yoakum, 257 S.W. 337; Hayes v. City of Beaumont, 190 S.W.(2d) 835; Poteet v. Bridges, 248 S.W. 415.

The governing body, the City Council of the City of Rockdale, alone has the authority to order an election to determine whether a school maintenance tax be levied upon property in its entire school district, in-

cluding that attached under Art. 2803 for school purposes only.  Arts. 2798, 2799, 2800, 2801, V. C. S.; Poteet v. Bridges, supra.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Chester E. Ollison*

Chester E. Ollison
Assistant

CEO:mw

APPROVED:

*Fagan Dickson*

FIRST ASSISTANT
ATTORNEY GENERAL